UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THOMAS J. AIKEN,

    Plaintiff,

vs.                                                            Case No. 3:08-cv-718-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income[2] ("SSI") payments on September 22, 2005, alleging an inability to work since December 31, 2004. (Tr. 93). The Social Security Administration ("SSA") denied this application initially and upon reconsideration. (Tr. 57, 62). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on February 4, 2008. (Tr. 52-53, 278). On April 4,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 11).

[2] Plaintiff also filed an application for disability insurance benefits. (Tr. 69). The claim was denied (Tr. 69) and Plaintiff did not challenge that determination.

1

2008, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 10-16). Because the Appeals Council denied Plaintiff's request for review on June 23, 2008, the ALJ's April 4, 2008 decision was the final decision of the Commissioner. (Tr. 2-4). Plaintiff timely filed his Complaint in the U.S. District Court on July 15, 2008. (Doc. 1).

## II.  NATURE OF DISABILITY CLAIM

### A.  Basis of Claimed Disability

Plaintiff claims to be disabled since December 31, 2004, due to lumbar degenerative disc disease, partial amputation of his left index finger, problems relating to a spider bite, right shoulder pain, pancreatitis, rectal bleeding, and an enlarged prostate. (Tr. 285-89).

### B.  Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was sixty-one years of age. (Tr. 93, 16). Plaintiff's past relevant work was as a construction worker and a pool laborer. (Tr. 283-84). He had obtained his GED. (Tr. 283).

Plaintiff's testimony indicated that his left index finger was amputated fifty years prior to the hearing before the ALJ. (Tr. 285). Additionally, Plaintiff was treated on multiple occasions in June 2005 for injuries to his left middle and fourth fingers. (Tr. 254-57). A June 2005 X-ray showed a minimally displaced fracture and an overlying soft tissue laceration. (Tr. 272). After four treatments, Plaintiff sought no further treatment on his left hand. (Tr. 177-277).

Plaintiff began treatment for lower back pain in April 2004 at Shands Jacksonville ("Shands"). (Tr. 260). X-rays on August 18, 2004 revealed degenerative disc disease at L4-5 and L5-S1. (Tr. 274). The final diagnosis on August 18, 2004 was a musculoskeletal

2

strain, and Plaintiff was released in "good" status (Tr. 261). On February 16, 2005, Plaintiff was treated at Shands, where the final diagnoses were lower back pain and sciatica. (Tr. 259). On February 18, 2005, Plaintiff was treated at Eastside Family Clinic where no significant objective findings were recorded and the final diagnosis was "lower back pain." (Tr. 187-88).

Additional X-rays were taken in March 2005 at Shands, which displayed decrease in the L4-L5 disc space and osteophyte formation at the L4 and L5 vertebral bodies. (Tr. 273). Plaintiff was able to leave the hospital in "good" status. (R. 258). Plaintiff last visited Shands in September of 2005, where the final diagnosis was lower back pain. (Tr. 251).

Plaintiff also testified to problems related to a spider bite on his hand, shoulder pain, rectal bleeding, pancreatitis, and an enlarged prostate. (Tr. 286-87, 288-89, 291). The record indicates treatment of the shoulder pain on one occasion in January 2006, but no information as to a diagnosis or treatment plan is provided. (Tr. 176). Plaintiff was diagnosed with acute prostatitis in March 2005. (Tr. 258). He later visited Shands Urology Center in May 2006, the record of which indicated his condition had improved. (Tr. 181-83). The record is without evidence of treatment or diagnosis of the spider bite, rectal bleeding, or pancreatitis. (Tr. 177-277).

On January 4, 2006, Plaintiff was consultatively examined by Dr. Timothy J. McCormick ("Dr. McCormick"). (Tr. 195-200). Dr. McCormick reported Plaintiff was a vague historian and wandered at times with regards to history. (Tr. 195). Dr. McCormick also noted Plaintiff's range of motion was limited in his right shoulder, but otherwise found the physical examination normal aside from Plaintiff's subjective complaints about his shoulder, knee, and back. (Tr. 197-98).

Plaintiff's file was later evaluated by Dr. Constance Cook ("Dr. Cook") on January 18, 2006 (Tr. 189-94) and Dr. Robert Wesly ("Dr. Wesly") on July 18, 2006. (Tr. 168-75). Both doctors indicated Plaintiff would have limited overhead reaching because of his shoulder and indicated Plaintiff would be capable of medium duty work. (Tr. 169, 171, 189A, 191). Additionally, both Dr. Cook and Dr. Wesly opined the symptoms exceeded the objective findings. (Tr. 173, 191A).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to SSI when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 416.920 (2008). The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 416.920(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 416.920(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 416.920(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 416.920(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 416.920(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.

4

Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff did not meet the severity requirement of step two and thus did not proceed to steps three through five. (Tr. 12-14). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date, September 22, 2005. (Tr. 12). At step two, the ALJ found two medically determinable impairments: partial amputation of Plaintiff's left index finger and lumbar degenerative disc disease. (Tr.12). The ALJ first rejected that the spider bite, rectal bleeding, pancreatitis, and enlarged prostate[3] represented medically determinable impairments at the time of the decision. (Tr. 12). Specifically, the ALJ indicated the record "[did] not reflect any treatment for/diagnosis of any of those conditions at any time relevant to this decision." (Tr. 12). Additionally, the ALJ dismissed the right shoulder injury because the record revealed treatment on only one occasion in January 2006 without information as to a diagnosis or a treatment plan. (Tr. 12) (citing Tr. 176). The ALJ thus determined the only medically determinable impairments were the partial amputation and the lumbar degenerative disc disease. (Tr. 12).

Next, the ALJ determined Plaintiff "[did] not have an impairment or combination of impairments that [] significantly limited (or [was] expected to limit) the ability to perform basic work related activities for 12 consecutive months; [and therefore did not have a severe impairment]." (Tr. 13). In making that determination, the ALJ "considered all symptoms and the extent to which [those] symptoms [could] reasonably be accepted as consistent with the

---

[3] While the ALJ incorrectly indicated the record did not include any treatment for or diagnosis of the prostate issues (Tr. 12), the record indicates it had improved as of Plaintiff's visit to Shands in May 2006. (Tr. 181-83).

objective medical evidence and other evidence . . . ." (Tr. 13). In considering Plaintiff's symptoms, the ALJ used a two-step process:

> [F]irst[,] . . . whether there is an underlying medically determinable physical . . . impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical . . . impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimants symptoms to determine the extent to which they limit claimant's ability to do basic work activities."

(Tr. 13).

After considering the evidence, the ALJ determined Plaintiff met the first step; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they indicated a severe impairment. (Tr. 14). In determining Plaintiff's statements were not credible, the ALJ considered: the lack of treatment sought for the spider bite; the inconsistent testimony about the finger amputation[4]; the "limited/sporadic" treatment for his back condition; the positive indications from Dr. McCormick's consultative examination; the testimony that Plaintiff still performed activities of daily living;[5] and the fact that the record did not reveal treatment for the alleged pancreatitis, enlarged prostate,[6] rectal bleeding, and left leg tingling and numbness. (Tr. 14-15). The ALJ then considered the opinion evidence

---

[4] Plaintiff testified at the hearing that the amputation occurred fifty years prior, but to Dr. McCormick that it occurred in 2005. (Tr. 14).

[5] "[I]ncluding washing dishes and assisting with household chores and watching his nephews." (Tr. 15).

[6] See supra note 3.

6

and, giving greater weight to the opinion Dr. McCormick,[7] determined there was no basis to determine Plaintiff had any severe impairments at any time pertinent to the decision. (Tr. 15).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable

---

[7] Dr. McCormick was given the opportunity to physically examine Plaintiff. (Tr. 15).

to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B. <u>Issues on Appeal</u>

Plaintiff argues two issues on appeal. First, Plaintiff believes the ALJ erred in failing to find his physical impairments severe. (Doc. 15, pp. 5-8). Second, Plaintiff argues the ALJ should have further developed the record regarding Plaintiff's injuries. (Doc. 15, p. 7). The Court will examine each of these claims.

**<u>Whether the ALJ erred in failing to find Plaintiff's physical impairments severe.</u>**

Plaintiff argues the ALJ erred in failing to find his physical ailments were severe. (Doc. 15, p. 5-8). The Commissioner argues substantial evidence supports the Commissioner's decision that Plaintiff did not have a severe impairment. (Doc. 16, p. 5). The issue is thus whether substantial evidence in the record supports the ALJ's decision that Plaintiff's impairments were not severe. This Court finds substantial evidence supports the ALJ's decision.

In Brady v. Heckler, the Eleventh Circuit held "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 724 F.2d 914, 920 (11th Cir. 1984). The Eleventh Circuit later clarified the standard for severity as a "threshold inquiry" where "only claims based on the most trivial impairments [are] to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). However, "'severity' of an ascertained disability must be measured in terms of its effect upon ability to work, and

8

not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1988); see also 20 C.F.R. § 416.920(c) (2008) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment . . . .").[8]

More recently, the Eleventh Circuit held in Gibbs v. Barnhart, substantial evidence supported the conclusion that a claimant's physical impairments were not severe where the record contained evidence of back pain, diabetes, hand tremors, headaches, leg swelling, and obesity. 156 F. App'x. 243, 244, 246-47 (11th Cir. 2005). The Gibbs court reasoned there was no evidence the impairments interfered with the plaintiff's ability to perform basic work activities or that he continuously sought treatment for his physical impairments. Id. at 247.

In the instant case, there is likewise no indication that Plaintiff's impairments interfered with his ability to perform basic work activities. Dr. McCormick was the only

---

[8]

Examples of [basic work activities] include--

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers, and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b) (2003).

doctor who actually examined Plaintiff, and he noted the examination was normal except for the limited range of motion in the shoulder and Plaintiff's complaints. (Tr. 195-200). Plaintiff's file was examined by two other doctors who found Plaintiff could be limited to the performance of medium work activity, but the ALJ allowed greater evidentiary weight to Dr. McCormick based on the fact that he personally examined Plaintiff as required by 20 C.F.R. § 416.927.

Additionally, as the ALJ pointed out, Plaintiff continued to be capable of performing daily living activities. Plaintiff continued to wash dishes, assist with household chores, and watch his young nephews. Also, Plaintiff testified that the last time he worked part time was at the end of 2006, almost two years after he claimed to be unable to work. (Tr. 284). Plaintiff continuing to work around the house and to work part time are not indicative of someone whose impairments "significantly limit his physical or mental ability to do basic work activities."

Further, similar to Gibbs, Plaintiff did not consistently seek treatment for his ailments. For example, there is no record of Plaintiff seeking treatment at all for the spider bite, rectal bleeding, or pancreatitis. (Tr. 177-277). Also, while Plaintiff did seek treatment for his lower back, the treatment was limited. (Tr. 187-88, 251, 259-61, 273-74). Plaintiff made several visits in 2004 and 2005 without any evidence of further treatment. In fact, on some of those visits Plaintiff left in "good" condition. (Tr. 251, 261). Plaintiff also sought treatment for prostate issues, but medical records indicated the condition may have improved. (Tr. 181-82)

Thus, there is little indication in the record that Plaintiff's impairments are any more than an "abnormality which has such a minimal effect on the individual that it

would not be expected to interfere with the individual's ability to work . . . ." Brady, 724 F.2d at 920. While his back ailment might be concerning from a medical standpoint long term, McCruter guides the Court to base the inquiry on the impairment's effect on the ability to work. 791 F.2d at 1547. The record does not indicate Plaintiff could not have been working despite the back injury. (Tr. 177-277). Also, McCruter instructs that because Plaintiff had been working for years with the partially amputated finger, the ALJ could have considered it evidence of a non-severe injury. Further, the Gibbs standard instructs that Plaintiff's injuries were not severe because he had little evidence that his alleged injuries would prevent him from performing basic work activities and rarely sought treatment of the injuries. 156 F. App'x. 243 at 246-47. Therefore, the Court finds substantial evidence supported the ALJ's finding that Plaintiff's injuries were not severe.

## Whether the ALJ erred in failing to develop the record further.

Plaintiff summarily argues the ALJ erred in failing to develop the record further. More specifically, Plaintiff claims his limited reaching should have alerted the ALJ that additional inquiry was needed. (Doc. 15, p. 7). This Court finds the ALJ did not err in failing to develop the record further.

The plaintiff bears the burden of proving he is disabled in SSI cases. 20 C.F.R. § 416.912 (a) (2008). However, the ALJ has a "basic obligation to develop a full and fair record." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Additionally, where the claimant is not represented by counsel, "the ALJ's basic obligation to develop a full and fair record rises to a special duty." Id. (quoting Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir. 1981)) (quotations omitted).

11

In the instant case, Plaintiff was unrepresented by counsel at the hearing with the ALJ even though he was represented by counsel before the hearing and during his appeal before this Court. (Tr. 280). During the hearing, the ALJ advised Plaintiff of the importance of the right to counsel and stated he was willing to give Plaintiff time to find a new attorney. (Tr. 280-81). However, in addition to notifying a claimant of his right to counsel, in order for the claimant to properly waive his right to counsel, an ALJ must inform the claimant of the possibility of obtaining free counsel and that any fee awarded to an attorney would be limited to twenty-five percent of the benefits awarded. Smith v. Schweiker, 677 F.2d 826, 829 (11th Cir. 1982). Here, there is no indication the ALJ informed Plaintiff of those rights at the hearing. (Tr. 278-94). Thus, even though Plaintiff elected to proceed without counsel, he did not properly waive his right to counsel and was entitled to the heightened Cowart standard. Cowart, 662 F.2d at 735.

Failing to notify the claimant of the possibility free counsel or the fee limitations, however, does not require an automatic reversal. In such situations, the court must examine the record to determine whether the claimant was prejudiced. Edwards v Sullivan, 937 F.2d 580, 586 (11th Cir. 1991). Thus, the Cowart special duty requires the ALJ to "'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' and to be 'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (quoting Cowart, 662 F.2d at 735).

To support the proposition that further development was needed, Plaintiff cites Hawkins v. Chater, 113 F.3d 1162 (10th Cir. 1997). (Doc. 15, p. 6). In Hawkins, a treating physician indicated the claimant possibly had a serious impairment and the

12

pertinent issue was whether the ALJ failed to develop the record when he refused to obtain a consultative examination. Id. at 1166. The Tenth Circuit held the ALJ did err in failing to develop the record further and indicated a consultative exam was necessary for a fully developed record under the circumstances. Id. at 1269-70.

The instant case is distinguishable from Hawkins. While the Hawkins court was determining whether a consultative examination was necessary, id. at 1166, in the instant case, Plaintiff was given a consultative examination by Dr. McCormick, which the ALJ considered heavily. (Tr. 195-201, 15). Additionally, the Hawkins court stated that even under the required de minimis standard for showing severity, the court could not "say on the basis of [the] record whether claimant's impairment [was] severe or not severe without more medical information." 113 F.3d at 1269-70. In the instant case, the ALJ was presented with Plaintiff's medical records dating back to 1995 and up to 2006 (almost two years after Plaintiff's claimed date of disability). (Tr. 177-277). Additionally, two other doctors completed Physical RFC assessments based on Plaintiff's file. (Tr. 168-75, 189-94). Lastly, the ALJ personally questioned Plaintiff to determine his credibility. (Tr. 280-94). Thus, there is no indication that any further investigation by the ALJ would have developed a more fair record.

In conclusion, the ALJ did not err in failing to develop the record further, even under the heightened Cowart standard. Plaintiff was represented before the ALJ hearing and during the appeal before this Court. Additionally, the record was thoroughly developed including a consultative examination, eleven years of medical records, two Physical RFC assessments and Plaintiff's own testimony. Thus, Plaintiff "has failed to demonstrate evidentiary gaps in the record which have resulted in prejudice sufficient to

justify a remand to the [Commissioner]." Graham, 129 F.3d at 1423.

## IV. CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence. Accordingly, the Clerk of the Court is directed to enter judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 7th day of June, 2009.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record